<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                    :
DORI SEABON,                                         :
                                                    :
                           Plaintiff,               :        Civil Action No. 10-2268
              v.                                    :
                                                    :        **OPINION**
COMMISSIONER OF SOCIAL                              :
SECURITY,                                           :
                           Defendant.               :
_____             :

PISANO, District Judge.

      Dori Seabon ("Plaintiff") appeals the decision of the Commissioner of Social

Security ("Commissioner") denying her request for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI").  The court has jurisdiction to review this

matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral

argument. *See* Fed. R. Civ. P. 78.  The Court finds that the record provides substantial

evidence supporting the Commissioner's decision that plaintiff is not disabled.

Accordingly, the Court affirms the Commissioner's decision.

## I.      BACKGROUND

      Plaintiff was born July 2, 1955 and at the time of this appeal was fifty-five years

old. (Administrative Record ("R") 25).  She has a bachelor's degree in business

administration and had worked as an office assistant for over 25 years. (R. 25, 112).  She

has not worked since January 27, 2005, at which time she suffered a nervous breakdown

and was hospitalized. (R. 30).  Plaintiff asserts that she has been disabled since then.

### A. Procedural History

Plaintiff filed an application for DIB and SSI on June 9, 2006 alleging that she was disabled due to anxiety and depression. (R. 97, 103).  The Social Security Administration denied her claims both initially and on appeal. (R. 64, 70).  Upon plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"). (R. 20).  On August 4, 2008, the ALJ issued a written decision denying plaintiff's claim. (R. 7).  On March 5, 2010, the Appeals Council denied plaintiff's request for review of the hearing, and the ALJ's decision became the final decision of the Commissioner. (R. 1).

Thereafter, plaintiff filed a complaint in this Court alleging that the ALJ's decision was not based on substantial evidence.  Specifically, plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment does not adequately reflect her psychiatric impairments, and consequently, the vocational expert's testimony cannot be relied upon because the ALJ did not convey all of plaintiff's credibly established limitations to the vocational expert.  Plaintiff asks this Court to reverse the Commissioner's order denying benefits or, otherwise, to remand the case for reconsideration.

### B. Factual History

Plaintiff has a bachelor's degree in business administration and worked as an office assistant at various companies from 1979 to 2005. (R. 25, 112).  During this time, her job responsibilities included answering phones, filing, typing, processing claims and insurance payments, and researching. (R. 113).  She also served as a supervisor for several years. (R. 113).  Her work was sedentary in nature. (R. 29).

In January of 2005, plaintiff suffered a nervous breakdown and was hospitalized due to major depression with psychotic features. (R. 174).  She was reportedly overwhelmed with financial, legal, and other social concerns. (R. 174).  In her intake assessment at Union City Psychiatric Clinic ("UCPC"), dated February 18, 2005, plaintiff reported that she had gotten very depressed due to continued stressors in her life including her recent eviction, conflicts with family, and an inability to maintain permanent employment. (R. 206-208).  She had also been drinking more heavily and got into a fight with two of her sisters with whom she was living. (R. 206-208).  She was diagnosed with major depression and alcohol abuse. (R. 203).

Psychiatric reports completed by Dr. Dinesh Patel, M.D., at UCPC from 2005 to 2007 indicate that plaintiff suffered from depressive disorder with anxiety. (R. 280-306). The reports also show that plaintiff's conditions improved once treatment was administered. (R. 190-200).  Doctors' notes from April 5, 2005 through July 14, 2006 state that plaintiff was "less depressed" and "doing better." (R. 190, 195, 199, 200). Psychiatric reports show that plaintiff was alert, interactive, and her thought process, insight, and judgment were all intact. (R. 287, 290, 293, 311).  Although her global assessment of functioning score was initially 45 in February 2005, it improved to 55-60 while treatment was ongoing. (R. 282, 288, 291, 294).  A score of 55-60 is consistent with moderate difficulty in social and occupational functioning. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders ("DSM"),* 34 (4th ed. Text Revision 2000).

Upon filing her applications for DIB and SSI, plaintiff completed a function report questionnaire on July 17, 2006. (R. 118-125).  Plaintiff reported that she felt

anxious, depressed, and nervous. (R. 119, 122).  She also stated that she had problems getting along with people because she is moody and short tempered. (R. 119).  Despite this, plaintiff reported that she could follow spoken and written instructions and had no problems getting along with bosses, teachers, police, landlords, or other people in authority. (R. 124).  Although she stated that she had difficulty paying attention, she stated that she was able to finish what she started. (R. 124).  Plaintiff also reported that she looked for a job, but could not find one. (R. 125).

On September 21, 2006, Dr. Kim Arrington, Psy. D., conducted a psychiatric examination of plaintiff. (R. 240-243).  She reported that plaintiff was alert; her thought process was coherent and goal directed; her attention, concentration, and memory were intact; her intellectual functioning was in the average to above average range; and her insight and judgment were good. (R. 241-242).  Vocationally, plaintiff was able to follow and understand simple instructions, perform simple tasks independently, maintain a regular schedule with support, learn new tasks and perform complex tasks, make appropriate decisions, and relate adequately with others. (R. 242).  Dr. Arrington concluded that plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. (R. 243).

Dr. W. Skranovski, M.D., then examined plaintiff on November 6, 2006. (R. 244-257).  He found that plaintiff suffered from an affective disorder, but that her impairment was not severe. (R. 244).  He reported that plaintiff did not have any restrictions of daily living; did not have any difficulties maintaining social functioning; and did not have any difficulty in maintaining concentration, persistence, or pace. (R. 254).  Moreover, he found that plaintiff was able to memorize and carry out tasks, interact socially in a work

setting, and adapt to change. (R. 256).  It was noted that plaintiff experienced one or two episodes of decompensation, each of extended duration. (R. 254).  Dr. Skranovski concluded, however, that there was no evidence of any functional limitations. (R. 256).

On February 27, 2007, Dr. Michael D'Adamo, Ph.D., reviewed and agreed with Dr. Skranovski's findings. (R. 276-277).  He stated that review of notes from January, 2005 through January, 2006 indicate progressive improvement of plaintiff's depression. (R. 276).

On February 7, 2007, Dr. Esha Khoshnu, M.D., conducted a psychological consultative examination of plaintiff. (R. 273-275).  At the examination, plaintiff reported suffering from agitation, anxiety, depression, mood swings, and trouble sleeping. (R. 273).  She also stated that she could not work because she starts sweating even when she thinks about looking for a job. (R. 273).  Dr. Khoshnu found, however, that plaintiff was alert and oriented and that her affect was normal. (R. 274).  Moreover, plaintiff could count serial sevens, spell the word "world" backward, and abstract the meanings of phrases, indicating normal cognitive functioning. (R. 275).  Dr. Khoshnu diagnosed plaintiff with bipolar disorder and estimated that her global assessment of functioning was 55-60. (R. 275).

At the hearing on August 4, 2008, plaintiff testified that she suffers from a lack of sleep, an inability to focus, and anxiety. (R. 30).  She currently takes psychotropic medication for her conditions. (R. 31).  Under questioning from her attorney, plaintiff stated that she experiences good and bad days in roughly equal proportions. (R. 32-34).  On good days, she is able to get up, take a shower, do chores, and go outside. (R. 32).  On bad days, she does not want to get out of bed and has to be told to do certain things. (R.

33).  When asked why she is unable to work, plaintiff stated that she is "jittery, anxious, and becomes snappy." (R. 36).  She said that she experiences anxiety about once a week and that it lasts for a few hours. (R. 36).

Plaintiff also testified that, following her hospitalization in 2005, she moved in with another sister and her two children. (R. 44).  She reported that, since doing so, her living situation has improved dramatically. (R. 17).  She is independent in her own care and able to live cooperatively with others. (R. 17).  Plaintiff stated that she shops, cooks, cleans, does household chores, takes her 16 year old nephew to and from school each day, helps the children with their homework, and volunteers at her niece's elementary school.  She also manages her own money, drives, and takes public transportation. (R. 44-48).  During the day, plaintiff enjoys watching television, listening to the radio, and bowling. (R. 46).

On August 28, 2008, Dr. Patel conducted a medical assessment of plaintiff's ability to do work related activities. (R. 307-309).  He reported that plaintiff's abilities to use her judgment, function on her own, and maintain personal appearance were good; but that her abilities to relate to co-workers, interact with supervisors, deal with stress, maintain concentration, and behave in an emotionally stable manner were all poor. (R. 307-308).  Moreover, Dr. Patel found that the plaintiff's ability to follow work rules; deal with the public; demonstrate reliability; and understand, remember and carry out complex job instructions was fair. (R. 307-308).  He noted that plaintiff "has difficulty concentrating, focusing, is irritable, and does not trust people." (R. 309).

Plaintiff continues to see Dr. Patel every two or three months for therapy and psychiatric treatment. (R. 31).  Medical records indicate that she has been stable on

medication and therapy; and she has not returned to the hospital since 2005.  Physical examinations conducted by Dr. Dyana Aldea and G. Manning indicate that plaintiff has no limitations for physical activity. (R 235-239, 266-272).

## II. LEGAL STANDARDS

### A. *Establishing Disability*

In order to be eligible for DIB benefits,[1] a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person is disabled for these purposes only if her physical and mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that she has not engaged in any "substantial gainful activity" since the onset of his alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c).  The claimant bears the burden of establishing these first two requirements.  Failure to meet this burden automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987).

---

[1] The standards for obtaining disability insurance benefits ("DIB"), 42 U.S.C. § 401 *et. seq*., and supplemental security income ("SSI"), 42 U.S.C. § 1381 *et. seq*., are the same in all relevant aspects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d).  If claimant's impairment or combination of impairments meets or equals a listed impairment, she is presumed to be disabled and is automatically entitled to disability benefits. *Id*.  If she cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e).  "Residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Id*. If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits. *Id*.  If the claimant is unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f).  If the commissioner cannot satisfy this burden, the claimant will receive social security benefits. *Yuckert*, 482 U.S. at 146-47 n. 5.

**B. Objective Medical Evidence**

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. and 42 U.S.C. § 1381 *et seq.,* a claimant is required to provide objective medical evidence in order to prove her disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. §

1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of [42 U.S.C.] § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."). She must provide medical findings that show that she has a medically determinable impairment. *See id.*; *see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…"); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect… [her] ability to do basic work activities unless "medical signs" or laboratory findings show that a medically determinable impairment is present." 20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

### III. STANDARD OF REVIEW

The district court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g); 1383(c)(3); *Williams*, 970 F.2d at 1182. Substantial evidence means more than a "mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 , 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Thus, substantial evidence may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Some types of evidence will not be "substantial." For example,

> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F.Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting

evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  Access to the commissioner's reasoning is essential to meaningful review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rationale.

*Gober v. Matthews*, 574, F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nevertheless, the district court is not empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1183.

## IV. DISCUSSION

### A. The ALJ's Decision

After reviewing all of the evidence in the record, the ALJ determined that plaintiff was not disabled and denied her claim. (R. 7).  The ALJ arrived at her decision by following the five-step sequential analysis required under 20 C.F.R. § 404.1520.

At step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since January 27, 2005, the alleged onset date. (R. 13).  At step two, she determined that plaintiff suffered from a "severe impairment," namely, an affective disorder with anxiety. (R. 13).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P. (R. 13).  Plaintiff does not contest the ALJ's findings at steps one through three of the analysis.

Prior to reaching step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with several limitations. (R. 15).  Specifically, plaintiff is limited to:

> simple, unskilled jobs involving one or two steps; low stress jobs (jobs that require only occasional change in the work setting during the work day, and only occasional change in decision-making required during the work day); jobs that require only occasional contact with supervisors, co-workers, and the general public; jobs that require no work in close proximity to others in order to avoid distraction; and jobs that permit at least three breaks during the workday, each of which are at least 15 minutes in duration.

(R. 15). In making this determination, the ALJ considered all of plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence.  The ALJ also considered opinion evidence.

In considering plaintiff's symptoms, the ALJ followed a two-step process in which she first considered "whether there is an underlying medically determinable physical or mental impairment… that could reasonably be expected to produce  the claimant's pain or other symptoms." (R. 15).  Second, she evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work related activities." (R. 15).  As the ALJ noted, "whenever statements about the intensity, persistence, or limiting effects of [plaintiff's] symptoms are not substantiated by the objective medical evidence, the [ALJ] must make a finding on the credibility of the statements." (R. 15).

The ALJ determined that, although plaintiff's impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (R. 16). Specifically, the ALJ found that the record indicates that plaintiff's anxiety and

depression have been stabilized with medication and therapy; she is alert and oriented; her thought process is goal directed; her memory and concentration are intact; and although she suffers moderate difficulty in social and occupational functioning, she is independent in her own care and able to live cooperatively with others. (R. 15-17).

In her decision, the ALJ did not give significant weight to Dr. Patel's functional assessment dated March 28, 2008 because it contradicted his treatment notes and prior opinions. (R. 17). She noted that, although it is reasonable to find that plaintiff has some difficulty dealing with stress and interacting with others, there is no indication that these problems are severe. (R. 17). Plaintiff's own testimony indicates that she is able to function day-to-day and gets along with others. (R. 17). Also, she is living cooperatively with her sister and her nieces and nephew and reports having friends. (R. 17). The ALJ concluded that any of plaintiff's limitations, including her irritability and snappishness, are adequately addressed by the RFC finding. (R. 17).

At step four, the ALJ determined that plaintiff could not return to her past relevant work as an office assistant. (R. 18). However, at step five, the ALJ held that plaintiff could perform other work that exists in significant numbers in the national economy. (R. 18). In making this determination, the ALJ asked a vocational expert ("VE") whether a significant number of jobs existed for an individual with plaintiff's age, education, work experience, and residual functional capacity. (R. 18). The VE reported that, given all of these factors, the individual would be able to perform the jobs of document preparer, sorter, bench worker, weigher, cleaner, and garment sorter. (R. 18-19). Based on this testimony, the ALJ concluded that plaintiff would be capable of making a successful adjustment to other work and, therefore, was not disabled. (R. 19).

13

**B. The Decision of the ALJ is Supported by Substantial Evidence**

Plaintiff objects to the ALJ's conclusion that she retained the limited functional capacity to perform other jobs existing in the national economy.  The ALJ reached that conclusion at step five based on testimony from a VE.  Plaintiff's primary argument is that the VE's testimony is not substantial evidence because it was based on answers to a hypothetical question that did not adequately reflect all of her credibly established limitations.

With regard to hypothetical questions, the Third Circuit has warned that "a question posed to a vocational expert must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting and adding emphasis to *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).  Additionally, "while the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

The above-cited cases should not be misunderstood, however, to require an ALJ "to submit to a [VE] every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).  Instead, "hypotheticals posed must 'accurately portray' the claimant's impairments and the VE must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Id*. (quoting *Podedworny*, 745 F.2d at 218).  Thus, references to *all* impairments in the above cases "encompass only those that are medically established… And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's *credibly*

*established limitations*." *Id*. (internal citations and footnotes omitted) (emphasis in original).[2]

In *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), the court held that although the ALJ may weigh the credibility of evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence.  Relatedly, the ALJ may not substitute his own expertise to refute record evidence. *See id*.  If a limitation is medically supported but is also contradicted by other evidence, the ALJ can choose to credit portions of the existing evidence and disregard others. *See Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993).  The ALJ cannot, however, "reject evidence for no reason or for the wrong reason." *Id*. (quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

With this framework in mind, the court turns to the limitations that plaintiff claims were disregarded by the ALJ in his hypothetical submitted to the VE.  Plaintiff alleges there were four such limitations: (1) her moderate difficulties in concentration, persistence, or pace; (2) her one or two episodes of decompensation; (3) her GAF score of 55-60; and (4) the extent to which her depression and anxiety affect her ability to do work.  As detailed below, the court holds that, to the extent any of these were credibly established limitations, they were accounted for by the ALJ in the hypothetical submitted to the VE.  Consequently, the ALJ was entitled to rely on the VE's testimony as substantial evidence at step five of the evaluation.

First, plaintiff contends that the ALJ's RFC assessment fails to reflect the ALJ's finding that plaintiff had moderate difficulties in concentration, persistence, or pace. (R.

---

[2] The court in *Rutherford* also noted that although the impairment must be medically determinable, it need not be a "severe" impairment to be considered in the RFC assessment.

14).  In support of her argument, plaintiff points to two cases in which the Third Circuit

found that a hypothetical that limited a claimant to simple repetitive one, two-step tasks

did not reflect all of the claimant's mental limitations. *See Burns v. Barnhart*, 312 F.3d

113 (3d. Cir. 2002); and *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).  These cases,

however, are factually distinguishable from the present case.  In *Burns*, the claimant was

diagnosed as having borderline range of intellectual functioning; and in *Ramirez*, the

claimant "*often* experienced deficiencies of concentration, persistence, or pace resulting

in a *failure* to complete tasks in a timely manner (in work setting or elsewhere)." 372

F.3d at 552.  Neither of these factors are present here.  Moreover, in both cases, the ALJ

addressed these impairments by only limiting the plaintiffs to simple routine one, two-

step tasks.  Here, however, the ALJ made a very thorough and specific RFC finding

which includes multiple limitations.

For instance, plaintiff's moderate difficulties with concentration, persistence, or

pace are reflected by the findings that she is limited to simple, unskilled jobs involving

one or two steps; low stress jobs; jobs that require no work in close proximity with

others; and jobs that permit at least three breaks during the workday.  These limitations

address plaintiff's difficulties in that they reduce distraction and allow plaintiff to keep

pace with simple work.  They are consistent with the findings of Dr. Arrington, who

stated that plaintiff could follow and understand instructions, perform simple tasks

independently, and learn new tasks and perform complex ones; and Dr. Skranovski, who

reported that plaintiff could memorize and carry out tasks, interact socially in a work

setting, and adapt to change. (R. 242, 256).

Plaintiff also argues that the ALJ failed to consider her one or two episodes of decompensation in the RFC determination.[3]  As defendant points out, the ALJ did, in fact, consider plaintiff's episodes of decompensation and concluded that they did not pose any functional limitations on plaintiff.  This finding is supported by the report of Dr. Skranovski, who, despite finding that plaintiff experienced decompensation, concluded that there was "no evidence of limitations." (R. 256).  Although decompensation often results in a loss of adaptive functioning and difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace, *see* 20 C.F.R., Part 404, Appendix 1, Listing 12.00(C)(4), Dr. Skranovski did not find any such symptoms. (R. 256).  Dr. D'Adamo, who reviewed Dr. Skranovski's findings, confirmed these conclusions. (R. 276).  Thus, it was not necessary for the ALJ to account for plaintiff's episodes of decompensation in the RFC or the hypothetical to the VE.

Next, plaintiff contends that the ALJ failed to transmit her GAF score of 55-60 to the VE, and that a GAF score in the 50's "absolutely disqualifies a patient from sustaining employment." (Pl. Br. 28).  The GAF scale is used to report "the clinician's judgment of the individual's overall level of functioning" in light of her psychological, social, and occupational limitations. *See* DSM, *supra*, at 32.  Contrary to what plaintiff states, a GAF score in the 50's indicates only "moderate symptoms or moderate difficulty in social, occupational, or school functioning." *Id*. at 34.  It has no correlation to the severity requirements in the mental disorder listings and no correlation to a person's

---

[3] Plaintiff contends that she suffers "episodes of decompensation one to two times per month every month." (R. 29). This is completely unsupported by the record. Dr. Skranovski's report only indicates that plaintiff has experienced "one or two" episodes and that this fails to satisfy item four of the "paragraph B" criteria for mental disorders. (R. 254).

ability to sustain employment. *See* 65 Fed. Reg. 50746, 50764-50765. Thus, the ALJ's finding that plaintiff could do work that was simple, low in stress, and required only occasional contact with others adequately conveyed any limitations represented by the GAF score to the VE.

Last, plaintiff argues that the allegedly disabling symptoms of panic attacks, anxiety attacks, and major depressive disorder were not adequately reflected in the ALJ's RFC assessment. The Court disagrees. First, the ALJ found plaintiff's claims regarding the severity of these symptoms to be not credible. The ALJ found that while "the evidence does establish a depressive disorder with anxiety," and that these conditions could "reasonably be expected to produce [plaintiff's] alleged symptoms... the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible." (R. 16). For instance, although plaintiff complains of severe depression and anxiety, treatment notes at UCPC indicate that these conditions have stabilized since her hospitalization in 2005, and that her overall condition has improved with medication and therapy. (R. 190-200). Moreover, Dr. Arrington reported that plaintiff's conditions do not interfere with her ability to function on a day-to-day basis. (R. 243).

Plaintiff's statements concerning the extent of her depressive disorder are also inconsistent with her own testimony. Plaintiff testified that she is independent in her own care and lives cooperatively with her sister and her nieces and nephew. (R. 44). She shops, cooks, cleans, does household chores, manages her own money, and drives. (R. 44-48). She also helps the children with their homework, volunteers at her niece's elementary school, and bowls. (R. 44-48, 122). Plaintiff even stated that she began looking for a job, indicating that she believed she could work. (R. 125). All of these

activities support the ALJ's credibility finding.  Although plaintiff stated she did these things on her "good" days and not her "bad" days, there is no evidence that her "bad" days preclude work with the limitations specified by the ALJ.

Further, the alleged severity of plaintiff's irritability, problems focusing, and stress is contradicted by the record.  Dr. Kim Arrington reported that plaintiff's attention, concentration, and memory were intact. (R. 241-242).  She also stated that plaintiff could follow and understand simple instructions and relate adequately with others. (R. 242). Dr. Skranovski reported that plaintiff had no difficulties in maintaining social functioning and no difficulties with concentration. (R. 254).  He also stated that plaintiff was able to memorize and carry out tasks, interact socially in a work setting, and adapt to changes. (R. 256).  In the July 17 questionnaire, plaintiff reported that she could follow spoken and written instructions and that she had no problems getting along with bosses, teachers, police, landlords, or other people in authority. (R. 124).  Although she alleged that she had difficulty paying attention, she admitted that she could finish what she started. (R. 124).

In evaluating plaintiff's RFC, the ALJ also considered but gave less weight to the more restrictive assessment of Dr. Patel.  Although treating sources generally receive controlling weight, they may be discounted if they are inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 202 (3d. Cir 2008).  Here, the ALJ properly declined to give weight to Dr. Patel's opinion because it contradicted his treatment notes and prior opinions.  For instance, although Dr. Patel reported in his functional assessment that plaintiff's abilities to relate to co-workers, interact with supervisors, and deal with work

stress were all poor, his treatment notes indicate that plaintiff was "improving" and, at most, had moderate limitations in social and occupational functioning. (R. 190-200, 282-294, 307-308).

Dr. Patel's opinion is further contradicted by the opinions of the state examiners, Dr. Arrington, Dr. Skranovski, and Dr. Khoshnu, upon whose findings the ALJ relied. Although Dr. Patel reported that plaintiff's ability to maintain attention and concentration were poor, Dr. Arrington and Dr. Skranovski both found that plaintiff's attention and concentration were intact. (R. 241, 254, 307).  And while Dr. Patel reported that plaintiff's ability to understand, remember, and carry out simple job instructions was severely limited, Dr. Arrington found that plaintiff could learn new tasks and perform complex ones; and Dr. Skranovski found that plaintiff was able to memorize and carry out tasks.  Dr. Khoshnu reported that plaintiff's symptoms were, at most, moderate. (R. 242, 256, 308).  Thus, the evidence does not support Dr. Patel's contention that plaintiff's abilities to concentrate, deal with stress, and interact with others are of a poor level.

In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence.  In reaching that determination, the ALJ relied upon the opinions and findings of Dr. Arrington, Dr. Skranovski, and Dr. Khoshnu, plaintiff's treatment notes, and plaintiff's activities of daily living.  Furthermore, the Court holds that any of plaintiff's limitations credibly established by the record are adequately addressed by the ALJ's RFC assessment.  Consequently, the hypothetical submitted to the VE was not improper and the opinion of the VE constituted substantial evidence upon which the ALJ relied.

**V. CONCLUSION**

The Court finds that the record provides substantial evidence supporting the

Commissioner's decision that plaintiff is not disabled.  Accordingly, the Court affirms the

Commissioner's decision. An appropriate Order follows this Opinion.


/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  July 25, 2011